**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 25-cv-2227 |
| ADVANCED REPRODUCTIVE HEALTH CENTER, LTD. d/b/a CHICAGO IVF; J.K., an individual; and A.M., an individual, | ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, Landmark American Insurance Company ("Landmark"), by and through its attorneys, TRAUB LIEBERMAN STRAUS AND SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against the Defendants Advanced Reproductive Health Center, Ltd. d/b/a Chicago IVF ("ARHC"), J.K., an individual, and A.M., an individual (collectively, where appropriate, the "Defendants"), alleges the following:

**NATURE OF THE ACTION**

1.      Landmark is an insurance company that issued a policy of insurance providing commercial general liability and professional liability coverage to "Advanced Reproductive Health Centers Ltd. and IF Chicagoland Ltd.," as the named insureds, bearing policy number LHC860057, for the effective period August 4, 2024 to August 4, 2025 (the "Landmark Policy").

2.      Landmark brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to obligations claimed to be owed by Landmark to ARHC in connection with the consolidated class action lawsuit styled, *A.M and J.K., individually and on behalf of all others similarly situated,*

*v. Advanced Reproductive Health Center, Ltd., d/b/a Chicago IVF*, pending under Case No. 1:24-cv-07559, in the U.S. District Court for the Northern District of Illinois (the "Underlying Lawsuit").

3.      There exists an actual controversy among the parties concerning their respective rights, duties and obligations under and pursuant to the Landmark Policy.

4.      Landmark has no adequate remedy at law and, therefore, desires a judicial determination of the parties' rights, duties and obligations under and pursuant to the Landmark Policy. A judicial determination is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations under and pursuant to the Landmark Policy in connection with the Underlying Lawsuit.

## THE PARTIES

5.      Landmark is, and at all times relevant, has been a corporation organized under the laws of New Hampshire, with its principal place of business located in Georgia.

6.      ARHC is, and at all times relevant, has been a corporation organized under the laws of Illinois, with its principal place of business located in Skokie, Illinois.

7.      A.M. is, and at all times relevant, has been domiciled in Manhattan, Illinois. A.M. is joined as a defendant herein as a necessary party so that they may be bound by the judgment entered in this case. If A.M. executes a stipulation agreeing to be bound by any judgment entered herein, Landmark will voluntarily dismiss A.M. from this action.

8.      J.K. is, and at all times relevant, has been domiciled in Plainfield, Illinois. J.K. is joined as a defendant herein as a necessary party so that they may be bound by the judgment entered in this case. If J.K. executes a stipulation agreeing to be bound by any judgment entered herein, Landmark will voluntarily dismiss J.K. from this action.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy, including the combined costs of defense and alleged liability in the underlying case, exceeds the sum or value of $75,000.00, exclusive of costs and interest. In addition, this action is brought pursuant to 28 U.S.C. §2201.

10.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 (a) and (b), because events giving rise to the insurance coverage dispute took place in this District.

## GENERAL ALLEGATIONS

### I.     The Underlying Lawsuit

11.     On January 16, 2025, A.M. and J.K. (collectively, where appropriate, the "Underlying Plaintiffs") filed their "Consolidated Class Action Complaint" (the "Complaint"). A copy of the Complaint is attached hereto as **Exhibit A**.

12.     The Underlying Lawsuit alleges that "the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and "there are more than 100 members in the proposed class."

13.     The Underlying Lawsuit arises out of ARHC's alleged intentional installation of tracking technologies (i.e., the Metal Pixel, Google Analytics and Google Tag Manager) on its website to collect and disclose private information to unauthorized third parties for pecuniary gain, without consent from the website users.

14.     The Underlying Lawsuit alleges that the tracking technologies are advertising and analytics tools that allow website owners to track visitor actions on their websites and send the corresponding information to the owner of the tracking technology.

3

15.     The Underlying Lawsuit alleges that ARHC utilized these tracking technologies in violation of ARHC's own privacy policies and HIPAA.

16.     The Underlying Lawsuit alleges that J.K. and A.M., patients of ARHC, visited and used ARHC's website in 2019 and 2021, respectively.

17.     The Underlying Lawsuit alleges that the private information collected and disclosed by ARHC included status as medical patients, communications with ARHC on the website, including medical conditions for which they sought treatments, searches for doctors, and scheduling of appointments (collectively, "PHI"), and personally identifiable information ("PII") including, but not limited to, patients' locations, IP address, device identifiers, individual's unique Facebook ID and other unique personal identifiers.

18.     The Underlying Lawsuit alleges ARHC assisted third parties in intercepting patients' communications with ARHC's website and disclosed the Underlying Plaintiffs' and the class members' private information to third parties.

19.     Count I of the Underlying Lawsuit asserts a claim for Violations of Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*., and alleges that whenever the Underlying Plaintiffs and the class members interacted with ARHC's website, ARHC through the tracking technologies embedded and operating on its website, contemporaneously and intentionally disclosed the Underlying Plaintiffs' and the class members' PII and PHI to third parties, without authorization or consent.

20.     In Count I of the Underlying Lawsuit, the Underlying Plaintiffs allege that the class members have suffered emotional distress and diminution in value of the Underlying Plaintiffs' and the class members' PII and PHI, and seek statutory damages (whichever is the greater of $100

4

for each day of violation or $10,000), equitable or declaratory relief, compensatory and punitive damages, and attorneys' fees and costs.

21.     Count II of the Underlying Lawsuit asserts a claim for Negligence, and alleges that ARHC breached its duties to the Underlying Plaintiffs and the class members by installing the tracking technologies to disclose and transmit PII and PHI to third parties without consent or authorization.

22.     In Count II of the Underlying Lawsuit, the Underlying Plaintiffs allege that they and the class members have suffered the following: (a) their PII and PHI is no longer private; (b) ongoing harassment and embarrassment in the form of unwanted targeted advertisements; (c) erosion of the provider-patient relationship; (d) general damages for the invasions of their rights; (e) nominal damages for each violation; and (f) diminution of their PII and PHI.

23.     Count III of the Underlying Lawsuit asserts a claim for Unjust Enrichment and alleges ARHC derived a benefit from its collection and disclosure of the Underlying Plaintiffs' and the class members' PII and PHI and has wrongfully retained such benefit.

24.     In Count III of the Underlying Lawsuit, A.M. and J.K. seek disgorgement into a common fund for the benefit of all class members of those unlawful or inequitable proceeds that ARHC received.

25.     Count IV of the Underlying Lawsuit asserts a claim for Violation of the Illinois Eavesdropping Statute (720 ILCS § 5/14-1, *et seq.*) that ARHC's violations were wonton, reckless and/or malicious.

26.     In Count IV, the Underlying Plaintiffs seek (a) class certification and representation; (b) equitable relief, enjoining ARHC from engaging in the unlawful practices and illegal acts described in the complaint; (c) injunctive relief and other equitable relief to protect the

interests of the class members; and (d) damages including (i) actual or statutory damages; (ii) punitive damages in an amount to be determined at trial; (iii) prejudgment interest on all amounts awarded; (iv) injunctive relief as the court deems proper; and (v) reasonable attorneys' fees and expenses and costs of suit.

## II.     The Landmark Policy

27.     Landmark issued a policy of insurance providing commercial general liability and professional liability coverage to "Advanced Reproductive Health Centers Ltd. and IF Chicagoland Ltd.," as the named insureds, bearing policy number LHC860057, for the effective period August 4, 2024 to August 4, 2025. A copy of the Landmark Policy is attached hereto as **Exhibit B**.

28.     The Landmark Policy provides commercial general liability limits of $1 million each occurrence, professional liability limits of $1 million each claim, and $3 million policy aggregate. Coverage under the Landmark Policy is subject to a $25,000 each claim deductible.

29.     The Insuring Agreement of Coverage B (Personal And Advertising Injury Liability) in the Commercial General Liability ("CGL") coverage part of the Landmark Policy provides, in relevant part, as follows:

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle or defend any "claim" or "suit" that may result. [* * *]

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

30. The CGL coverage part of the Landmark Policy defines "personal and advertising injury" as follows:

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** The use of another's advertising idea in your "advertisement."

31. The CGL coverage part of the Landmark Policy contains an Exclusion v. (Access Or Disclosure Of Confidential Or Personal Information), which precludes coverage for:

**v.** **Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

32. The Insuring Agreement of the Medical Professional Liability ("MPL") coverage part of the Landmark Policy provides as follows:

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Business Description on the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than sixty (60) days after the end of the **Policy Period**;

2. Negligent act, error or omission took place in a covered territory;

3. Negligent act, error or omission took place after the **Retroactive Date** as shown in the Declarations.

33. The Declarations of the Policy identifies ARHC's "Business Description" as "Fertility Clinic."

34. The MPL coverage part of the Landmark Policy contains an Exclusion A., which precludes coverage for any "Claim" or "Claim Expenses" based upon or arising out of:

A. **Personal and Advertising Liability.**

35. The MPL coverage part of the Landmark Policy defines "Personal and Advertising Liability" as follows:

G. **Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution or abuse of process;
3. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Use of another's advertising idea in your **Advertisement**; or
7. Infringing upon another's copyright, trade dress or slogan in your **Advertisement**.

## III. Landmark's Disclaimer Of Coverage

36. On December 3, 2024, Landmark issued correspondence disclaiming coverage to ARHC for the underlying lawsuits filed individually by A.M. and J.K. (which were later

consolidated) and requesting that ARHC withdraw its tender of the same. A copy of Landmark's December 3, 2024 correspondence is attached as **Exhibit C**.

37.     On January 10, 2025, counsel for ARHC issued email correspondence to counsel for Landmark advising that the defense of ARHC in the Underlying Lawsuit is currently being covered by another insurance carrier. A copy of Walker Lawrence's January 10, 2025 email correspondence is attached hereto as **Exhibit D**.

38.     On February 7, 2025, Landmark issued correspondence reiterating its disclaimer of coverage to ARHC and attaching a draft complaint seeking declaratory judgment relief if ARHC failed to withdraw ARHC's tender of the Underlying Lawsuit. A copy of Landmark's February 7, 2025 correspondence is attached as **Exhibit E**.

39.     On February 18, 2025, counsel for the parties had a telephone call, in which counsel for ARHC represented that he would get Landmark a response to its request for ARHC to withdraw its tender of the Underlying Lawsuit during the week of February 24, 2025. A copy of the February 18, 2025 email correspondence from Landmark's counsel memorializing the February 18, 2025 telephone call is attached as **Exhibit F**.

40.     Despite Landmark's subsequent requests for ARHC to withdraw its tender, ARHC (including its counsel) have failed to withdraw ARHC's tender of the Underlying Lawsuit.

**COUNT I – DECLARATORY JUDGMENT**
**(No Duty To Defend Or Indemnify ARHC In Connection With The Underlying Lawsuit Under The CGL Coverage Part Of The Landmark Policy)**

41.     Landmark adopts and realleges the allegations in Paragraphs 1 through 40 of its Complaint as and for Paragraph 41, as if fully set forth herein.

42.     The Insuring Agreement of Coverage B (Personal And Advertising Injury Liability) of the CGL coverage part of the Landmark Policy provides that Landmark will pay those sums

that ARHC becomes legally obligated to pay as damages because of "personal and advertising injury."

43.     The CGL coverage part of the Landmark Policy defines "personal and advertising injury" as follows:

**15.**     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;
**b.**     Malicious prosecution;
**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.**     The use of another's advertising idea in your "advertisement."

44.     The Underlying Lawsuit arises out of ARHC's alleged intentional installation of tracking technologies (i.e., the Metal Pixel, Google Analytics and Google Tag Manager) on its website to collect and disclose private information to unauthorized third parties for pecuniary gain, without consent from the website users.

45.     The Underlying Lawsuit, therefore, does not allege a "personal and advertising injury," as the term is defined by the Landmark Policy.

46.     Because the Insuring Agreement of Coverage B (Personal And Advertising Injury Liability) of the CGL coverage part of the Landmark Policy is not satisfied, Landmark has no duty to defend or indemnify ARHC under the CGL coverage part of the Landmark Policy in connection with the Underlying Lawsuit.

47.     Coverage under Insuring Agreement of Coverage B (Personal And Advertising Injury Liability) of the CGL coverage part of the Landmark Policy is subject to an Exclusion v.

(Access Or Disclosure Of Confidential Or Personal Information), which precludes coverage for "'Personal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."

48. The Underlying Lawsuit arises out of ARHC's alleged intentional installation of tracking technologies (i.e., the Metal Pixel, Google Analytics and Google Tag Manager) on its website to collect and disclose private information to unauthorized third parties for pecuniary gain, without consent from the website users, and specifically alleges ARHC had access to and disclosed the class members' confidential or personal information.

49. Because Exclusion v. (Access Or Disclosure Of Confidential Or Personal Information) applies to preclude coverage for ARHC under the CGL coverage part of the Landmark Policy, Landmark has no duty to defend or indemnify ARHC under the CGL coverage part of the Landmark Policy in connection with the Underlying Lawsuit.

50. An actual controversy exists between Landmark and ARHC, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Landmark American Insurance Company, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Landmark Policy;

b. Find and declare that Landmark has no duty under the CGL coverage part of the Landmark Policy to defend ARHC in the Underlying Lawsuit, or indemnify ARHC for any judgment or settlement entered therein; and,

11

c.     Grant Landmark such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT
### (No Duty To Defend Or Indemnify ARHC In Connection With The Underlying Lawsuit Under The MPL Coverage Part Of The Landmark Policy)

51.     Landmark adopts and realleges the allegations in Paragraphs 1 through 50 of its Complaint as and for Paragraph 51, as if fully set forth herein.

52.     The Insuring Agreement of the MPL coverage part of the Landmark Policy provides that Landmark will pay on behalf of ARHC, all sums that it becomes legally obligated to pay as "Damages" and associated "Claim Expenses" arising out of a negligent act, error or omission, in the rendering of or failure to render professional services as described in the Business Description on the Declarations.

53.     The Declarations of the Policy identifies ARHC's "Business Description" as "Fertility Clinic."

54.     The Underlying Lawsuit alleges that ARHC intentionally installed tracking technologies on its website and disclosed the class members' personal information to unauthorized third parties without consent.

55.     The Underlying Lawsuit, therefore, does not allege a negligent act, error or omission in the rendering of or failure to render professional services, described as "Fertility Clinic."

56.     Because the Insuring Agreement of the MPL coverage part of the Landmark Policy is not satisfied, Landmark has no duty to defend or indemnify ARHC under the MPL coverage part of the Landmark Policy in connection with the Underlying Lawsuit.

57.     Coverage under the Insuring Agreement of the MPL coverage part of the Landmark Policy is subject to an Exclusion A. any "Claim" or "Claim Expenses" based upon or arising out of:

**A.      Personal and Advertising Liability.**

58.     The MPL coverage part of the Landmark Policy defines "Personal and Advertising Liability" as follows:

> **G.      Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:
>
> **1.**      False arrest, detention or imprisonment;
>
> **2.**      Malicious prosecution or abuse of process;
>
> **3.**      Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> **4.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **5.**      Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> **6.**      Use of another's advertising idea in your **Advertisement**; or
>
> **7.**      Infringing upon another's copyright, trade dress or slogan in your **Advertisement**.

59.     The Underlying Lawsuit arises out of ARHC's alleged intentional installation of tracking technologies (i.e., the Metal Pixel, Google Analytics and Google Tag Manager) on its website to collect and disclose private information to unauthorized third parties for pecuniary gain, without consent from the website users.

60.     Because Exclusion A. applies to preclude coverage under the MPL coverage part of the Landmark Policy, Landmark has no duty to defend or indemnify ARHC under the MPL coverage part of the Landmark Policy in connection with the Underlying Lawsuit.

61. An actual controversy exists between Landmark and ARHC, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Landmark American Insurance Company, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Landmark Policy;

b. Find and declare that Landmark has no duty under the MPL coverage part of the Landmark Policy to defend ARHC in the Underlying Lawsuit, or indemnify ARHC for any judgment or settlement entered therein; and,

c. Grant Landmark such other and further relief that the Court deems proper under the facts and circumstances.


Dated: March ___, 2025        Respectfully submitted,

LANDMARK AMERICAN INSURANCE COMPANY

*/s/    Danielle K. Kegley*
Danielle K. Kegley
One of Plaintiff's Attorneys

Brian C. Bassett (6285714)
Danielle K. Kegley (6320903)
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY LLP
71 S. Wacker Dr., Ste. 2110
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-2908
bbassett@tlsslaw.com
dkegley@tlsslaw.com